By the Court, Bronson, J.
In contracts of sale which have been fully executed on the part of the vendor by the delivery or *66 conveyance of the thing sold, no fraud on his part in making thfe contract can operate as a complete bar to an action for the price, unless the thing sold was absolutely worthless, or the vendee has returned or reconveyed the property on the discovery of the fraud. When sued for the price, the vendee may, in general, recoupe damages; but while he retains the property he cannot treat the contract as wholly void, and refuse to pay any thing. By retaining the property he affirms the validity of the contract, and can be entitled to nothing more than the damages which he has sustained by reason of the fraud. In this case the contract was completely executed on the part of the plaintiff by the conveyance of the land. The defendant has got that still, and when he offered to prove fraud as a bar to the action, instead of offering it in abatement of damages, he asked too much, and the evidence was properly rejected for that reason.
The next question is, whether this defence can be set up in an action upon a scaled instrument, Avhere the evidence does not go to the whole consideration. The statute provides, that the seal “ shall only be presumptive evidence of a sufficient consideration, which may be rebutted in the same manner, and to the same extent, as if such instrument were not sealed.” (2 R. S. 406, § 77.) The language is broad enough to include the case of a partial as well as a total want or failure of consideration; and I see no good reason why the defendant should not be allowed to recoupe damages in an action upon a sealed as well as upon an unsealed instrument. If the point has not been directly adjudged, it has often been assumed, that the statute had placed both classes of contracts upon the same footing, and that in the one case as rvell as in the other, the defendant might attack the consideration either in whole or in part. (Case v. Boughton, 11 Wend. 106; Johnson v. Miln, 14 Wend. 195; Tallmadge v. Wallis, 25 Wend. 107.) It is true that the statute speaks of pleading, as well as giving notice of this defence, (§ 78 ;) and it cannot be pleaded where it does not go to the whole consideration. (Per Walworth, Chancellor, in Tallmadge v. Wallis.) But the Avords of the statute avüI be satisfied by alloAving the defendant to plead the defence Avhere it amounts to a complete *67 bar, and requiring him to give notice where it only goes in defalcation of damages.
The defendant’s evidence was finally offered by way of recoupment, and that brings us to the question whether there was any such fraud as would give the defendant an action. If there was, the defendant may have the proper allowance in this suit, instead of being put to his cross action.
According to the third and fourth offers of evidence, the land was purchased for the purpose of being laid out and sold for building-lots, and the plaintiff knew it. He also knew, and the defendant did not know, the condition and situation of the land; and the plaintiff falsely and fraudulently represented that the land was even and level, well situated for building lots, and required no grading : all of which was false. It will seem marvellous, if not wholly incredible, to those who did not live in the years eighteen hundred, thirty-five and six, that men should purchase lands lying within ten hours ride of their residence and agree to pay thirty-two thousand dollars, without ever having taken the trouble to look at the property either in person or by an agent. But farms lying in the vicinity of cities and villages were then so'much in demand for the building of new towns, that many persons thought it best not to hazard the loss of a bargain by stopping to look or inquire, when they could purchase at a thousand dollars per acre. They might better lose the little sum of $32,000 than be absent one whole day. from Wall-street, and thus miss the possible chance of purchasing the site of some other prospective city of much greater magnitude. Wonderful as it may seem to the next generation, such things did happen; and in this case the defendant offered to prove that he knew nothing about the land, except that it lay on the opposite side of the river from the city of Albany. He trusted to the representations of the plaintiff in relation to the condition of the property, and the only question is, whether the defendant must charge the loss upon his own folly and the madness of the times, or whether the plaintiff has done such a wrong as may be redressed by action. The credulity of the defendant furnishes but a poor excuse for the falsehood and fraud of the plaintiff,. *68 and the latter will have no just ground for complaint if he is held responsible for his misconduct. I am not entirely without apprehension that some bad consequences may result from giving an action against the vendor for misrepresentations concerning the quality or condition of the land he sells. Common prudence requires that the vendee should ascertain the truth of such assertions before he acts. But I am unable to distinguish this case from Sanford v. Handy, (23 Wend. 260.) There, the alleged misrepresentation related to the location of the land. Here, the false representation related to the condition of the property, or the practicability of using it for building purposes with little or no expense. We think the evidence should have been received.(a)
If the jury shall find the fraud, the question is then asked, how shall the amount of the defendant’s damages be ascertained? As the land, whether the representations were true or false, was in reality wortli only a small part of the price which the defendant agreed to pay, there may be some difficulty in answering the question. But it may, I think, be solved. We must not go back to the date of the contract for the price, and then come down to the present day for the actual value of the land, and charge the plaintiff with the difference. The defendant must bear the consequences of the prevailing delusion about prices and new towns under which the purchase was made. On the other hand, the plaintiff cannot say that his fraud has worked no injury because every body has now found out that the land never was worth any thing for the purpose of building a town upon it. (See Smith v. Griffith, 3 Hill, 333.) The cause must, as far as practicable, be tried just as it would have been tried the day after the contract was made, if the question had arisen at that time. The jury must assume, what the parties then believed, that the land was valuable as the site for a town, and then en-quire how much less the land was worth for building purposes, taking the surface as it actually existed, than it would have been worth for those purposes had the plaintiff’s representation con *69 ceming the surface been true. One mode of arriving at the correct result, and perhaps the only one, would be to enquire into the probable expense of reducing and conforming the surface of the ground to a condition corresponding with the plaintiff’s representation. This would, I think, give the correct rule of damages ; but in the present stage of the cause it is not necessary to settle the question.
There was a further offer to show that the defendant represented he had just paid ,$32,0.00 for the land, when in truth he had only paid one half that sum. An intimation was thrown out by the chief justice in Sanford v. Handy, (23 Wend. 260,) that a misrepresentation as to the actual cost of property might be a material fact; but the point was not decided. It is not every false affirmation of the vendor which will give the vendee an action, although he may be deceived by it. It often happens in the making of bargains that many things are said which neither party regards of much consequence; and if the buyer trusts to representations which were not calculated to impose upon a man of ordinary prudence, or if he neglects the means of information easily withm his reach, it is better that he should suffer the consequences of his own folly, than to give him an action against the seller. (See 2 Stark. Ev. 471, ed. of 1826; Bowring v. Stevens, 2 Car. & Payne, 337; Sugd. On Vend. 2, 3.) No action will lie for a false representation by the vendor concerning the value of the thing sold; it being deemed the folly of the purchaser to credit the assertion. And besides, value is matter of judgment and estimation, about which men may differ. Nor will an action lie for a false affirmation that a person bid a particular sum for the estate, although the vendee was thereby induced to purchase, and was deceived as to the value. And so of other cases where the purchaser might by the exercise of common prudence have ascertained the truth and saved himself from injury. (Harvey v. Young, Yelv. 21, and note by Metcalf ; Davis v. Meeker, 5 John. 354; Bayly v. Merril, Cro. Jac. 386; Fenton v. Browne, 14 Ves. 145; Sugd On Vend. 2, 3 ; Kinaird v. Lord Dean, id. p. 4, note.) In such cases the false affirmation is not enough. The vendee must go further and show that some deceit was practiced for the purpose of put *70 ting him off his guard. (Dawes v. King, 1 Stark. R. 75.) In Ekins v. Tresham, (1 Lev. 102,) it was held that an action would lie for falsely affirming that the property was let at £42 per annum, when the rent was less than that sum, by which the plaintiff was deceived and induced to pay a high price for the property. It was admitted, however, that no action would lie for a false affirmation concerning value; but a distinction was taken as to the rent, and the court said, “ Perhaps the lease is by parol, or the tenant will not inform the purchaser what rent he gave.” This decision was followed in Lysney v. Selby, (2 Ld. Raym. 1118; 1 Salk. 214, S. C., by the name of Risney v. Selby.) But Lord Holt said of Ekins v. Tresham, that “ If it were not for that resolution, I should think it a hard action to maintain.” And Gould, J. said: “ The value of the rents was a hard thing to be known, and secret, known to none but the landlord and the tenants, and they might be in confederacy together.” And it was not until “ after long considering” that the court finally agreed that the action could be maintained. Those cases have since been followed. (Dobell v. Stevens, 3 Barn. & Cress. 623; Bowring v. Stevens, 2 Carr. & Payne, 337.) If an affirmation concerning the cost of the property was of any consequence, I think the defendant should have taken the trouble to inquire and satisfy himself. But I cannot think it a matter of any legal importance. It was only another mode of asserting" that the property was of the value of §32,000; and all the books agree that no action will lie if such an affirmation prove false. It is the folly of the purchaser to trust to it. Indeed, the representation here amounts to less than a direct affirmation of value, for it only asserts that the plaintiff and another man agreed that such was the value. It would lead to great mischief to allow men to annul contracts upon such a ground. If the defendant could make out that the plaintiff was his agent in purchasing from Van Rensselaer, then what the plaintiff said about the price he paid might be material; but not in any other point of view.
Such are my views upon this branch of the case; but my brethren are of opinion that the false affirmation concerning the price paid for the land- furnishes a good ground of action. *71 There must, therefore, be a new trial upon this point, as well as the one relating to the condition of the land.
New trial granted.

 See Bostwick v. Lewis, (1 Bay, 250;) Norton v. Hatheway, (id. 255,6, note (d)) ; Sherwood v. Salmon, (2 id. 128; 5 id. 438, S. C. vn chancery.)