## CHARLES D. HAUK
### v.
## WM. J. BROWNELL ET AL.

| 19 | 189 |
| 111 | 372 |

FRAUDULENT REPRESENTATION AS TO PRICE PAID.—While a misstatement to the vendee by the vendor of the price paid for the article proposed to be sold may not afford a ground for recovery, yet where a fiduciary relation exists between the parties and it has been agreed between them that the property should be purchased for their joint benefit, a fraudulent misrepresentation by the vendor as to the price paid by him will give the vendee a right of action for such fraud.

APPEAL from the Circuit Court of McLean county; the Hon. O. T. REEVES, Judge, presiding.   Opinion filed February 25, 1886.

Messrs. KERRICK, LUCAS & SPENCER, for appellant; cited Banta v. Palmer, 47 Ill. 99; Nœtling v. Wright, 72 Ill. 390; Tuck v. Downing, 76 Ill. 71; Plummer v. Rigdon, 78 Ill. 222.

Mr. JAMES S. EWING and Messrs. FIFER & PHILLIPS, for appellees; cited Van Epps v. Harrison, 5 Hill, 67; Sanford v. Handy, 23 Wend. 259; Ives v. Carter, 24 Conn. 392; Somers v. Richards, 46 Vt. 170; McFadden v. Robinson, 35 Ind. 24.

CONGER, J.   Charles D. Hauk, interested with Mast, Foos & Co. in the gas business, and secretary of the Bloomington Gas Company, about Sept. 13, 1883, commenced negotiations with appellee Pollock, the effect of which was to interest him, appellee Brownell, and one Samuel Jones, in the enterprise of building gas works at Springfield, Illinois; the gas to be manufactured by the " Lowe Patent Gas Process."

After talking the matter up for some time, visiting Springfield and interesting Jones in the matter, it was agreed that these gentlemen, with others, would undertake to build gas works at Springfield, and would purchase the necessary license.

In January, 1884, Hauk notified appellees, together with the others interested in the scheme, that it would be necessary to purchase a license to manufacture the gas at Springfield under this patent process; that it was held by one Stevens, of Chicago, and that he could and would buy it for $7,000. Hauk went to Chicago, returned and represented to them that he had bought the license, and paid therefor $7,000; and thereupon appellees purchased a one-fifth interest in the Lowe Process Gas Patent, for Springfield, and in all the rights and privileges that had been, or might thereafter be, secured for the benefit of the new gas company that was to be organized, paying to Hauk therefor the sum of $1,400, and receiving from him the following instrument:

"Received of John E. Pollock and W. J. Brownell, the sum of fourteen hundred dollars, ($1,400,) in full for one-fifth interest in the Lowe Process Gas Patent, for the city of Springfield, Illinois, and also in full payment for one-fifth interest in all the rights and privileges that have been, or may hereafter be, secured for the benefit of the new gas company that is sought to be organized. I further personally covenant and agree that I have paid for the said patents the sum of seven thousand dollars.

January 24, 1884.                        CHAS. D. HAUK."

The company was never formed and the enterprise failed.

Hauk did not pay $7,000 for the license for Springfield, as he represented to appellees both verbally and by his receipt given for the money. It appears that he bought a license for Springfield and Peoria together, paying therefor $2,500 in cash, and $7,500 in the stock of the Bloomington Gas Company, worth about seventy-five cents on the dollar.

This suit was brought by appellees to recover the money so paid to Hauk, and they obtained a judgment for $1,542.10, being the amount paid and interest thereon. It is contended by appellant's counsel that even if Hauk deceived appellees as to the price he had paid for the license to manufacture gas at Springfield it would affor1 no ground of recovery, as it would be merely a misstatement to the vendee by the vendor of the price paid for the article proposed to be sold, and cite

Banta v. Palmer, 47 Ill. 99, and Menim v. Arbuckle, 81 Ill. 501, to sustain the position.

In the Palmer case, *supra*,. a vendee sued to recover back part of the sum paid the vendor for the price of certain lands, upon the ground that the vendor had fraudulently misrepresented the price he had paid for them ; and the court say : "If no fiduciary relation existed between the parties, however wrong, morally, it may have been in the defendant to misrepresent to the plaintiff the price he had paid for the land, the misrepresentation does not entitle the plaintiff to recover." And again the court in the same case say : "The case turns upon the question whether, before the land was purchased by the defendants, it had been agreed between him and the plaintiff that it should be purchased for their joint benefit."

In the present case we think both the elements held necessary in the case cited to warrant a recovery exist. While no company had been formally organized, one was in contemplation and it was agreed between appellees and appellant that the former were to go into the enterprise on an equality with himself as to outlays in organizing ; or as it is expressed by a witness, appellees were to be let in on the "ground floor," and the purchase of this license was made for the joint benefit of all those working up the scheme, as much as the machinery necessary for carrying on the business. Had appellant gone to Chicago and purchased an engine to run the works of the proposed company, falsely represented the price paid for it, and in consequence of such false representations procured appellees to pay him a greater sum than their true proportion ,of its real price, would any one doubt for a moment that such fraud would support an action ? There was a relation of trust and confidence existing between them which required fair dealing and forbade falsehood and chicanery.

In the Menim case, *supra*, the court say : " To render a representation fraudulent it must be false, and not only so, but the party making it must know it to be false. To recover in an action for deceit, the statement must be untrue, the party making it must know that it is false, and the person

seeking to recover must have relied on the statement as true and have been induced to act on the statement, and the statement, to authorize a recovery, must have been in relation to a matter material to the transaction."

The statement made by appellant to appellees, that he had paid $7,000 for the license, was false, and appellant knew it, and that it was a statement material to the transaction is apparent, not only from the testimony of Pollock, but from the language of the written receipt, in which Pollock required appellant to personally covenant and agree that he had paid for the said patents the sum of $7,000; and Pollock in his testimony says: "I supposed he had paid it in cash, and I relied upon his representations when I put my money into it."

We think here are all the elements necessary to bring the case within the rule quoted and give the appellees a right to recover back the money.

To the objection made by appellant, that appellees ought not to be allowed to rescind the contract and recover the money paid without re-conveying the thing purchased, it is enough to say that appellees obtained nothing except a right in the license for Springfield, from claiming which, this suit effectually estops them, and we do not see that appellant could require anything more.

Objection is made to the ruling of the court upon the admission and rejection of certain questions, but we do not think they could have affected the result or worked harm to appellant and therefore we do not notice them further.

We think justice has been done in the judgment of the circuit court, and it will therefore be affirmed.

Affirmed.